IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MICHAEL JOSEPH BLONDIN #442136, | ) |
| Plaintiff, | ) |
| | ) NO. 3:19-cv-00957 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| BEDFORD COUNTY SHERIFF'S DEPARTMENT, et al., | ) |
| Defendants | ) |

**MEMORANDUM OPINION**

Michael Joseph Blondin, a state inmate confined in the Bledsoe County Correctional Complex in Pikeville, Tennessee, filed a pro se complaint for alleged violation of his civil rights pursuant to 42 U.S.C. § 1983 and is proceeding *in forma pauperis*. The complaint (Doc. No. 1) is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A and 42 U.S.C. § 1997e.

## I. STANDARD OF REVIEW

Title 28 U.S.C. § 1915A requires the Court to conduct an initial review of any complaint in which a prisoner seeks redress from a governmental entity, officer, or employee, and to dismiss the complaint or any part of it that is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A

pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff sues under 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). To state a § 1983 claim, a plaintiff must allege: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that on May 20, 2019, as he was in custody leaving the Bedford County courthouse to be transported to Riverbend Maximum Security Institution (RMSI), he had a physical altercation with several Bedford County sheriff's deputies. Specifically, he alleges that Deputy Mills repeatedly punched him in the head while he was shackled and unable to defend himself, and that after Plaintiff obeyed an order to lie down on the ground, Mills and another deputy drove one knee into the back of his neck and another into his lower back while hitting him repeatedly. (Doc. No. 1 at 12–13.) According to Plaintiff, one of the officers then held Plaintiff's head and slammed it repeatedly into the pavement and struck him in the back of the head with a hard object. (*Id.* at 13.) Plaintiff implies that Mills's attack may have been partly motivated by Mills's erroneous belief, based on a beard Plaintiff wore on the day of the altercation, that Plaintiff was a Muslim, and Plaintiff alleges that he had no more physical confrontation with any Bedford County deputies after he shaved the beard and told Mills that he shared Mills's "beliefs in

spirituality." (*Id.* at 16–17.)

Allegedly, after more officers arrived and placed Plaintiff in the back of a patrol car, one of the officers asked Plaintiff whether he needed to go to the hospital. (*Id.* at 13–14.) Plaintiff allegedly responded "hell yes," because he saw that blood was dripping from his head. (*Id.* at 14.) According to Plaintiff, when an ambulance arrived and a medical responder asked Plaintiff what was wrong, Plaintiff responded that he did not know but that his head was killing him and told another inquiring officer that he "wasn't sure" what had happened. (*Id.*) Allegedly, the medical responder observed that Plaintiff had "a couple abrasions" and asked Plaintiff whether he needed to go to the hospital, to which Plaintiff responded "I don't know, you are the professional." (*Id.*) Plaintiff further alleges that an officer told one of the people who arrived in the ambulance that Plaintiff "was refusing to go to the E.R. and it was only a little scrape." (*Id.*) Plaintiff alleges that "[b]y this time [he] did not feel like arguing and only wanted to get back to RMSI." (*Id.*)

According to Plaintiff, when Plaintiff arrived at RMSI, staff there photographed Plaintiff's injuries and asked if he wanted to see the nurse. (*Id.* at 14–15.) Allegedly, Plaintiff responded that his head was killing him and he just wanted to lie down, so staff "did as [he] asked" and put him in a cell where he was able to sleep. (*Id.* at 15.) Plaintiff alleges that he was never seen by a health professional about his head injury, and that the injury has caused extreme headaches, ringing in his ears, blurred vision, and short-term memory problems. (*Id.*)

Plaintiff alleges that approximately one month after the altercation, he was charged with aggravated assault on a peace officer and attempted robbery, based on Deputy Mills's statement that Plaintiff had attempted to take his weapon and put him in fear for his life and safety. (*Id.* at 15.) Plaintiff's appointed criminal defense attorney, Michael Collins, later told Plaintiff that, because of his altercation with Deputy Mills, he would not receive a fair trial on any of his pending

3

criminal cases in Bedford County and that his "only choice" was to accept an offered plea agreement. (*Id.* at 16.) Plaintiff alleges that he was reluctant to accept the offer, but Collins told Plaintiff that Plaintiff's mother had been informed of the offer and wanted him to take it, which Plaintiff asserts "broke what little trust I had left in him regarding our attorney client privillage [sic]." (*Id.*) Plaintiff alleges that Collins did not act in his best interests and that "if given a fair trial in another county with a different lawyer [he] would not be guilty of anything [he] was forced to accept in that plea agreement." (*Id.*) Finally, Plaintiff alleges that he was further pressured into pleading guilty by having Deputy Mills transport him again in August 2019 and by having Bedford County officers "multiple times" try to trap him into a confession by asking "what [he] was thinking by doing what [he] did on May 20th." (*Id.* at 17.)

Plaintiff claims that the alleged events constitute a violation of his freedom of religion, excessive force/cruel and unusual punishment, violation of attorney-client privilege and the right to legal representation, negligence, and violation of the right to medical care. (Doc. No. 1 at 3.) He sues the Bedford County Sheriff's Department, the Bedford County Emergency Medical Service, and the Bedford County Public Defender's Office and seeks, *inter alia*, $6 Million in damages and "[t]o be given a fair trial on criminal charges in a different county on cases related to [the] incident." (*Id.* at 2–3, 5.)

### III.   ANALYSIS

A.   MEDICAL NEEDS

Deliberate indifference to an inmate's serious medical needs "constitutes the unnecessary and wanton infliction of pain" and violates the Eighth Amendment rights of convicted prisoners and Fourteenth Amendment rights of pretrial detainees. *Ruiz v. Martin*, 72 F. App'x 271, 275 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Miller v. Calhoun Cty.*, 408 F.3d

803, 812 (6th Cir. 2005). But a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013). And the "deliberate indifference" necessary to violate the constitution is a higher standard than negligence and requires that the official know of and disregard an excessive risk to the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff alleges that he was bleeding and had what a medical responder described as "a couple abrasions" immediately after the May 20 altercation. But he acknowledges that he did not ultimately insist on going to the hospital for treatment, but rather deferred to the medical judgment of "the professional" and "only wanted to get back to RMSI," and that once there he declined a visit with a nurse. He complains about ongoing effects of his injuries but does not allege that he has ever sought medical treatment for them or that they are so obvious that anyone would recognize the need for treatment. He has not identified anyone who knew of and disregarded any excessive risk to his health. Plaintiff's federal constitutional claim regarding his medical needs will therefore be dismissed.

B.     USE OF FORCE

An Eighth Amendment excessive force claim has both a subjective and objective component. *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). To determine whether the subjective component is met, the question is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Considerations relevant to this subjective component may include "the need for the application of force, the relationship

between the need and the amount of force that was used, and the extent of injury inflicted." *Williams*, 631 F.3d at 383 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The objective component asks whether the pain inflicted was "sufficiently serious." *Williams*, 631 F.3d at 383 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component is met when force is used maliciously and sadistically to cause harm, whether or not significant injury is evident. *Williams*, 631 F.3d at 383 (citing *Wilson*, 501 U.S. at 289); *see also Wilkins*, 559 U.S. at 34.

Taking Plaintiff's allegations as true as the Court must at this stage of the case, the use of force he describes as taking place on May 20 satisfies this standard, but there are obstacles to its litigation here. Because Plaintiff does not specify the charge on which he was ultimately convicted, the Court is unable to determine whether his excessive-force claim is incompatible with that conviction such that it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010) (discussing circumstances under which an excessive-force claim might conflict with a conviction). But this claim must be dismissed for a more fundamental reason, which is that Plaintiff has failed to identify a proper Defendant. Plaintiff presumably intends the Bedford County Sheriff's Department to be the Defendant to this claim, but a sheriff's department is not an entity capable of being sued under Section 1983. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting Tennessee district court cases concluding that police departments and sheriff's offices are not proper parties to a § 1983 suit). Accordingly, Plaintiff's excessive-force claim, along with any related religious retaliation claim, must be dismissed for failure to sue a proper party.

C.  VALIDITY OF PLAINTIFF'S CONVICTION

The remainder of Plaintiff's complaint amounts to a direct challenge to the validity of his

6

conviction for the criminal charge to which he acknowledges he pleaded guilty. He alleges that he was pressured in various ways to plead guilty to a crime for which he would have been found not guilty in a fair trial and effectively seeks to have this Court vacate his conviction so he can be "given a fair trial," as well as damages for his "lost freedom." (Doc. No. 1 at 5.) Plaintiff is prohibited from litigating these claims under Section 1983 while his conviction stands. The law is well established that "habeas corpus is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement ... even though such a claim may come within the literal terms of § 1983." *Heck v. Humphrey*, 512 U.S. 477, 481 (1994) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 488–90 (1973)). The United States Supreme Court has explained that "a state prisoner's § 1983 action is barred (absent prior invalidation [of his conviction or sentence])—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Moreover, to the extent Plaintiff blames his conviction on his appointed defense attorney, a public defender appointed to represent a defendant in his criminal case "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding," *Polk County v. Dodson*, 454 U.S. 312, 325 (1981), and this Court has held that "a public defender's office is not a 'person' within the meaning of § 1983." *Newell v. Montgomery Cty. Pub. Def.'s Office*, No. CIV.A. 3 09 0440, 2009 WL 1392838, at *2 (M.D. Tenn. May 18, 2009). Accordingly, the claim against the Bedford County Public Defender's Office must also be dismissed. And because there is nothing Plaintiff conceivably could do to fix the flaw in this claim—*i.e.,* nothing he could do to make Bedford County Public Defender's Office suable

7

when it simply is not, under applicable law—the claim against Bedford County Public Defender's Office will be dismissed with prejudice.

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's claim against Bedford County Public Defender's Office will be dismissed with prejudice. Otherwise, Plaintiff's complaint will be dismissed without prejudice to his ability to re-file if and when Plaintiff is able to overcome the *Heck* bar or to allege facts sufficient to satisfy the standards above against defendants who are suable under Section 1983. Because all of Plaintiff's federal claims are being dismissed, the Court declines to exercise supplemental jurisdiction over any state-law negligence claims raised by the complaint. *See* 28 U.S.C. § 1367(c)(3) (providing that a court may decline to exercise supplemental jurisdiction over a claim when it has dismissed all claims over which it has original jurisdiction).

An appropriate Order shall enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE